# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-616

**BRETT REED**

**VERSUS**

**GEORGE ROSS, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. 2017-C-019
HONORABLE E. DAVID DESHOTELS, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## D. KENT SAVOIE
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Phyllis M. Keaty, and D. Kent Savoie, Judges.

**REVERSED AND REMANDED.**

**M. Benjamin Alexander**
**Derrick G. Earles**
**Madeleine Brumley**
**Laborde Earles Law Firm, LLC**
**1901 Kaliste Saloom Rd. (70508)**
**P.O. Box 80098**
**Lafayette, LA 70598-0098**
**(337) 261-2617**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Brett Reed**

**Carey B. Underwood**
**Mike C. Sanders**
**Davenport, Files & Kelly, L.L.P.**
**1509 Lamy Lane**
**P.O. Drawer 4787**
**Monroe, LA 71211-4787**
**(318) 387-6453**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **FCCI Insurance Company**

**Frederick Douglas Gatz, Jr.**
**Lewis Brisbois Bisgaard & Smit**
**400 Poydras, Ste 1300**
**New Orleans, LA 70130**
**(504) 322-4100**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Plaza Insurance Company**
     **George Ross**

**Jeffrey Charles Napolitano**
**Jude, Napolitano, Guilbeau**
**3320 W. Esplanade Ave. North**
**Metairie, LA 70002**
**(504) 831-7270**
**COUNSEL FOR INTERVENOR/APPELLEE:**
     **Arch Insurance Company(Intervenor)**
     **Arthur J. Gallagher & Co RiskManagement Services**

**Mark Alan Perkins**
**Perkins & Associates, L.L.C.**
**401 Market St., Suite 900**
**Shreveport, LA 71101**
**(318) 222-2426**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Richards Logging, LLC**

**Cynthia Gatlin Sonnier**
**Lewis, Brisbois, Bisgaard**
**400 Poydras, Ste. 1300**
**New Orleans, LA 70130**
**(504) 322-4100**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Plaza Insurance Company**
     **George Ross**

**Michael D Lonegrass**
**Galloway, Johnson**
**701 Poydras Street, 40th Floor**
**New Orleans, LA 70139-1200**
**(504) 525-6802**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Arch Insurance Company (UM carrier)**

**Rachal C. Kramer**
**Lewis Brisbois Bisgaard & Smit**
**400 Poydras St, Ste 1300**
**New Orleans, LA 70130**
**(504) 322-4100**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **George Ross**
     **Plaza Insurance Company**

**Christopher A. Meeks**
**Galloway, Johnson**
**#3 Sanctuary Blvd, 3rd Floor**
**Mandeville, LA 70471**
**(985) 674-6680**
**COUNSEL FOR DEFENDANT /PPELLEE:**
     **Arch Insurance Company (UM carrier)**

**Meredith A. Mayberry**
**Lewis Brisbois Bisgaard & Smit**
**400 Poydras, Ste. 1300**
**New Orleans, LA 70130**
**(504) 322-4100**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **George Ross**
     **Plaza Insurance Company**

**SAVOIE, Judge.**

In this auto accident case, Plaintiff Brett Reed ("Reed") appeals a summary judgment dismissal of his claims against Richards Logging, LLC ("Richards Logging") and its insurer FCCI Insurance Company ("FCCI"). The trial court found that the defendant-driver, George Ross ("Ross"), was not an employee of Richards Logging at the time of the accident and therefore neither Richards Logging, nor its insurer, are liable for any negligence on the part of George Ross. For the following reasons, we reverse the summary judgment dismissal of Reed's claims, and remand the matter for additional proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 17, 2016, Reed and Ross were involved in an auto accident at the intersection of US Highway 165 and Pawnee Road in Allen Parish. At the time of the accident, Ross was driving a logging truck and hauling timber for Richards Logging to a mill.

Reed filed a petition for damages on January 17, 2017, naming Ross as a defendant, as well as Ross's auto liability insurer, Plaza Insurance, and Reed's insurer, Arch Insurance Company. On May 22, 2018, Reed amended his petition to add Richards Logging, LLC as an additional defendant, as well as FCCI, who was Richards Logging's liability insurer. Therein, Reed alleged that at the time of the accident, Richards Logging was the "the employer and/or master of the employee/servant," Ross, and therefore Richards Logging and FCCI are liable under La.Code Civ.P. art. 2320 for any damages caused by Ross's negligence.

On March 18, 2019, FCCI filed a motion for summary judgment seeking dismissal of Reed's claims. Therein, it argued that because Richards Logging was not legally responsible for its subcontractor's (Ross's) negligence, there was no

coverage under the FCCI policy. FCCI attached, *inter alia,* the deposition of Robert Richards (Richards), Ross's discovery responses, and a certified copy of the FCCI insurance policy as exhibits to its motion.

On April 9, 2019, Reed filed an opposition to FCCI's motion arguing that issues of fact precluded a summary judgment determination of whether Richards Logging could be held liable for Ross's negligence under La.Code Civ.P. art. 2320. Reed further argued that, even if Ross was not an "employee" of Richards Logging, there were genuine issues of material fact regarding whether Ross was nonetheless an "insured" under the terms of the FCCI policy, and therefore summary judgment dismissal was not appropriate. In addition, Reed objected to requests for production that FCCI attached as exhibits to its motion, arguing that requests for production are "notably absent from the exclusive list of summary judgment exhibits" set forth in La.Code Civ.P. art. 966(A)(4).

On April 22, 2019, Richards Logging filed a similar motion for summary judgment seeking dismissal of Reed's claims arguing that because it was not Ross's employer, it was not liable for any damages caused by Ross's negligence. In support thereof, Richards Logging submitted excerpts from Richards' and Ross's depositions, a copy of the subcontractor agreement, a W-9 and 1099 form, Richards' affidavit, and responses to discovery.

Reed filed an opposition to Richards Logging's motion on May 20, 2019. In support thereof, he submitted, *inter alia*, the complete depositions of Ross and Richards and exhibits attached thereto.

A hearing on the summary judgment motions was held June 13, 2019. During the hearing, Reed's counsel made oral objections to exhibits that were attached to both Richards Logging's and FCCI's motions, including the copy of the

FCCI policy attached to FCCI's motion. Reed's counsel argued the documents are not contemplated by the exclusive list of permissible exhibits set forth in La.Code Civ.P. art. 966(A)(4). The trial court overruled the objections.

Thereafter, the trial court found that Ross was not an employee of Richard's Logging and therefore neither Richard's Logging nor FCCI could be liable for any negligence on the part of Reed. On June 27, 2019, the trial court rendered a judgment granting both Richards Logging's and FCCI's motions and dismissing Reed's claims against them. Reed appeals and asserts the following as assignments of error:

1. The District Court erred in ruling that Richards Logging is not vicariously liable for [Reed's] damages caused by Ross under La. Civil Code art. 2320 in light of the evidence establishing that Ross hauled timber exclusively for Richards Logging, from every Richards Logging job site, consecutively for the past 7 to 10 years; and establishing that Richards Logging maintained and exercised the right of operational control over Ross's hauling operations.

2. The District Court erred in overruling [Reed's] motion to strike and his objection to the filing of FCCI's insurance policy as an exhibit to its motion for summary judgment, and in failing to deny FCCI's motion as lacking evidentiary support, given that the motion was based entirely on policy language and the policy alone did not fall within any of the categories of documents allowed to be filed under La. Code Civ. Pro. Art. 966(A)(4).

3. The District Court erred in ruling that FCCI's liability insurance policy issued to Richards Logging for the policy period covering the accident did not provide coverage for [Reed's] claims in light of the evidence proving Ross's logging truck qualifies as a "Nonowned Auto" and "covered auto" under the terms of the policy, rendering coverage available and applicable.

## ANALYSIS

"[T]he trial court's determination in a motion for summary judgment is reviewed de novo. Accordingly, the appellate court uses the same criteria as the trial court in determining whether summary judgment is appropriate[.]"

3

*Berthiaume v. Gros*, 15-116, p. 3 (La.App. 3 Cir. 6/3/15), 165 So.3d 1275, 1277 (internal citations omitted).

Louisiana Code of Civil Procedure Article 966(A)(3) provides: "After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law."

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

La.Code Civ.P. art. 966(D)(1).

> A fact is considered "material" when its existence or nonexistence might be essential to a plaintiff's cause of action under his or her applicable theory of recovery. *Ebarb v. Matlock*, 46,243 (La.App. 2 Cir. 5/18/11), 69 So.3d 516, *writ denied*, 11-1272 (La. 9/23/11), 69 So.3d 1164. Thus a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Id*. "A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765-66.

*Berthiaume*, 165 So.3d at 1277.

At issue herein is whether the movers, Reed and FCCI, established that there was no genuine issue of material fact and they were entitled to judgment as a matter of law that Richards Logging was not Ross's employer as contemplated by

La.Civ.Code art. 2320 and they are not liable for any negligence on the part of Ross.

> Pursuant to La.Civ.Code art. 2320, employers are answerable for the damage occasioned by their employees "in the exercise of the functions in which they are employed." For an employer to be held liable under Article 2320, "the plaintiff must show that (1) a master-servant relationship existed between the tortfeasor and the employer, and (2) the tortious act of the tortfeasor was committed within the scope and during the course of his employment with the employer." *Hughes v. Goodreau*, 01-2107, pp. 5-6 (La.App. 1 Cir. 12/31/02), 836 So.2d 649, 656, *writ denied*, 03-232 (La.4/21/03), 841 So.2d 793.

*Grabowski v. Smith & Nephew, Inc.*, 14-433, 13-1409, p. 24 (La.App. 3 Cir. 10/1/14), 149 So.3d 899, 915, *writ denied*, 14-2291 (La. 1/23/15), 159 So.3d 1057.

"However, '[a] principal generally is not liable for the offenses committed by an independent contractor while performing its contractual duties.[']" *Green v. Bobby A. Freeman Estate,* 99-1262, p. 2 (La.App. 3 Cir. 4/5/00), 759 So.2d 201, 203 (internal citations omitted). "The fact that a contract delineates an individual as an independent contractor is not the only factor in determining whether that individual is an employee or independent contractor." *Grabowski,* 149 So.3d at 915. As recognized by the Louisiana Supreme Court,

> [T]he distinction between employee and independent contractor status is a factual determination to be decided on a case-by-case basis." *Fontenot v. J.K. Richard Trucking*, 97-220, p. 7 (La.App. 3 Cir. 6/4/97), 696 So.2d 176, 180. In *Hickman v. Southern Pacific Transport Company*, 262 La. 102, 262 So.2d 385 (1972), this court found the following factors relevant in determining whether the relationship of principal and independent contractor exists: (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) there is a specific price for the overall undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either

5

side without a corresponding liability for its breach. *Hickman*, 262 So.2d at 390-91.

*Tower Credit, Inc. v. Carpenter,* 01-2875, p. 6 (La. 9/4/02), 825 So.2d 1125, 1129.

> The law further recognizes that inquiry to determine whether a relationship is that of independent contractor or that of mere servant requires, among other factors, the application of the principal test: the control over the work reserved by the employer. In applying this test[,] it is not the supervision and control which is actually exercised which is significant, the important question is whether, from the nature of the relationship, the right to do so exists.

*Hickman v. S. Pac. Transp. Co.*, 262 So.2d 385, 391 (La.1972).

In the instant case, the record establishes that Richards Logging and Ross signed a written agreement entitled "Subcontractor Agreement," which stated in part as follows:

> This SUBCONTRACTOR AGREEMENT . . . is made . . . by and between Bob Richards dba Richards Logging . . . (hereinafter referred to as "company") and George Ross (hereinafter referred to as "subcontractor") of Richards Logging to provide services to company as agreed upon by both parties:
>
> A. Subcontractor agrees to provide hauling services as directed by the company or its duly authorized representative. . . . Subcontractor is considered an independent contractor, not an employee of the company.
>
> . . . .
>
> C. Subcontractor agrees to provide hauling services at job sites for Richards Logging.

The written agreement further stated that compensation for services was at a rate "as agreed," and it required Ross to maintain his own insurance coverage. It also provided that the agreement could be terminated by either party or by mutual agreement upon written notice. The agreement did not provide for a specific term or duration; however, according to the deposition testimony in the record, the parties signed a copy of the same agreement each year.

Ross testified during his deposition that Richards Logging was his "employer," he had worked for Richards Logging for seven years at the time of the accident, and he received W-2 forms from Richards Logging. However, Ross also testified that he was a lease contract driver. Ross explained that he was paid per job based upon mileage and tonnage of the load. Ross further testified that he owned both the truck and trailer involved in the subject accident, that he maintained insurance on it, and that he performs maintenance on the truck every weekend.

Richards' deposition testimony was also submitted in connection with the summary judgment motions. Therein, he indicated that Richards Logging had two "full time" contract drivers, including Ross. Richards explained that his agreement with Ross for hauling services was "at will," such that either party could terminate the relationship without the other being entitled to any lost profits as a result of termination. Richards further explained that, for each job, they had an oral agreement as to how much Ross would be compensated for mileage and tonnage; however, Ross had no ability to bargain with him concerning the amount of compensation.

Richards also testified as follows when questioned by counsel during his deposition:

Q. When you contract these drivers, do they exclusively work for you or can they haul for someone else?

A. No, they haul loads for anybody.

Q. Okay. Do they have to tell you when they're going to be hauling for you and when they're not?

A. No, I just expect them to show up.

. . . .

Q.  Okay.  And if you expect them to show up and they don't show you, then you would . . .

A. Call another one.

. . . .

Q.  Would you say, "Hey, I'm not dealing with you anymore" and terminate your relationship

A.  No, no.

. . . .

Q.  Now . . . independent contract drivers that haul logs, do they ever, in general, push back with you and tell you whether they're going to be on the site or not on the site?

A.  They come and go as they please, pretty much.  That's lease trucks.  They're aggravating at times.

Richards also testified that, during the past ten years, he has called Ross for every Richards Logging job and Ross has never refused a job during that time.  Richards further testified:

Q.  But I guess there's an understanding that Ross knows --

. . .

Q. -- Ross is going to be the guy you call on for every job?

A.  Yes, sir.

. . . .

Q.  Okay.  At this point, your understanding, would you basically say the relationship or the economic reality of the situation is that Ross makes about a hundred percent of his income from Richards Logging?

A. Yes.

Richards also testified that he called Ross because he was generally reliable and "[h]e's a good employ - - a good contract truck[,]" and he agreed that Ross "could decide whether he wanted to show up or not." When asked why he did not

just hire Ross as an employee, Richards stated "Because he likes being a contract truck. They feel like they make their own rules. And the more they work, the more money they make."

Richards also explained during his deposition that he is usually present at each job site and directs the drivers as to where to have their trucks loaded. He indicated that the contract drivers, including Ross, would sometimes assist in loading the trucks or assist with the "delimber" and that they were expected to comply with general safety rules such as refraining from horseplay and drinking alcohol on the job. Richards testified that Ross would be terminated immediately if he were drinking on the job. Richards further explained that contract drivers were not required to attend safety meetings, but that they did attend. In addition, he indicated that contract drivers were required to haul timber to wherever he directed them, but that the drivers could choose which route to take and were permitted to hire another driver or assistant in their discretion. Richards further agreed that, on the job site, he is "the boss out there" and "within reasonable limits, [the contract drivers] are supposed to do what [he] tells them to do[.]"

Our review of the record leads to the conclusion that genuine issues of material fact exist as to whether Ross is an employee of Richards Logging or an independent contractor. The record contains evidence that could weigh in favor of Ross being considered an independent contractor under the factors enumerated in *Tower Credit, Inc.*, 825 So.2d 1125, as well as evidence that could weigh in favor of Richards Logging being considered an employer under those same factors. While the agreement at issue identifies Ross is an independent contractor, it does not provide a specific price for the hauling services agreed to, there is no agreed upon time or duration of the work, and neither party is subject to liability for

breach upon a termination of the relationship. In addition, while there is evidence suggesting that Ross had discretion as to which route to take when hauling lumber for Richards Logging to a mill, there is also evidence indicating that Richards determined whether or not to call Ross for a job, expected Ross to be available when called, directed Ross as to where to haul the timber, and expected Ross to comply with directions he provided. Further, the written contract at issue did not contemplate "specific piecework as a unit," but rather generally provided that Ross would provide hauling services "at the direction of" Richards Logging. It was error for the trial court to weigh the evidence presented in connection with a summary judgment ruling, and we therefore reverse the summary judgment rendered in favor of Reed and remand the matter for further proceedings.

Having concluded that material issues of fact exist as to whether Richards or FCCI can be held liable for Ross's negligence as an employer under La.Civ.Code art. 2320, and having reversed the summary judgment granted in favor of Richards Logging and FCCI on this basis, we pretermit a discussion of the remaining assignments of error Reed presents on appeal.

## DECREE

For the reasons set forth above, we reverse the trial court's summary judgment dismissal of Reed's claims against Richards Logging and FCCI, and we remand the matter to the trial court for further proceedings. Costs of this appeal are assessed to Richards Logging and FCCI.

**REVERSED AND REMANDED.**